Approved: _____
SAMUEL RAYMOND / VLADISLAV VAINBERG
Assistant United States Attorney

Before:   HONORABLE PAUL E. DAVISON
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA            :   **SEALED COMPLAINT**

          - v. -                    :   Violations of
                                        21 U.S.C. §§ 841(a)(1),
ANTIONNE JOHNSON,                   :   841(b)(1)(B) and 846
    a/k/a "Boogie,"                 :
                                        COUNTY OF OFFENSE:
          Defendant.                :   WESTCHESTER

- - - - - - - - - - - - - - - - X       18M7092

SOUTHERN DISTRICT OF NEW YORK, ss.:

          PAO MEI FISHER, being duly sworn, deposes and says that she is a Special Agent with the Federal Bureau of Investigation, and charges as follows:

                              COUNT ONE

          1.   From in or about January 2018 to in or about August 16, 2018, ANTIONNE JOHNSON, a/k/a "Boogie," the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

          2.   It was a part and object of the conspiracy that ANTIONNE JOHNSON, a/k/a "Boogie," the defendant, would and did distribute and possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

          3.   The controlled substances that ANTIONNE JOHNSON, a/k/a "Boogie," the defendant, and others known and unknown, conspired to distribute and possess with intent to distribute were: 100 grams and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United

States Code, Section 841(b)(1)(B), as well as a quantity of crack cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(C).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and the foregoing charges are, in part, as follows:

4.   I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and I have been personally involved in the investigation of this matter. This Affidavit is based upon my personal participation in the investigation, including my review of pertinent documents and recordings, my participation in surveillance, my examination of reports and records, and my conversations with other law enforcement officers and other individuals. Because this Affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

**The Controlled Buys**

5.   I have learned that on more than twenty-three separate occasions, from in or about January 2018 through at least in or about July 30, 2018, a confidential informant (the "CI") and an undercover officer (the "UC") made controlled purchases of narcotics from ANTIONNE JOHNSON, a/k/a "Boogie," the defendant.

6.   I have spoken with law enforcement officers who told me that some time before January 17, 2018, the CI[1] said he knew that a man he knew as "Boogie" was selling narcotics in Westchester County. On January 17, 2018, the CI met with law enforcement at a location in Mount Vernon. The officers searched the CI for money and contraband and none were found;

---

[1] The confidential informant has been working with the Mount Vernon Police Department for at least five years. He is currently a paid confidential informant, and has been paid for the instant controlled purchases. The information he has provided has been proven reliable and has been corroborated. The confidential informant has a lengthy criminal history, including prior narcotics and firearms offenses.

the CI then called a phone number he said belonged to "Boogie;" and the CI arranged to purchase $160 of heroin from Boogie. The CI then entered into the UC's car, and the UC drove to a location in Mount Vernon. There, the UC later reported, a black male entered into his car and introduced himself as Boogie. The UC told Boogie he wanted to buy two bundles of heroin, and wanted the glassines in the bundles unstamped, so the UC could sell the glassines himself. Boogie then exited the car and asked to speak with the CI. A few minutes later, the UC saw Boogie walking away from the car; the CI re-entered and said the UC needed to drive to Boogie's house in the Bronx. The UC drove to a location in the Bronx where he observed Boogie standing in front of a building. The UC handed $160 to the CI; the CI exited the car and approached Boogie. The UC observed Boogie and the CI speaking. A few minutes later, the CI returned and reentered the UC's car, handing the UC twenty envelopes which appeared, in the UC's experience, to contain heroin, which was unstamped. The UC and the CI drove back to meet with the other law enforcement officers.

7. For both the second and third controlled purchases, on January 19 and January 30, 2018, law enforcement searched the CI for money and contraband and none were found, and then the CI then called "Boogie" to arrange to purchase narcotics. The UC then drove with the CI to a location in the Bronx, where they met with Boogie, and Boogie transacted a substance with the informant and the UC in exchange for money provided by the UC.

8. After January 30, 2018, the CI asked Boogie's permission to give Boogie's telephone number, a number ending in 3718 (the "3718 Number,") to the UC so that the UC could buy narcotics directly. Boogie agreed. On at least seventeen occasions, on February 5, February 9, February 16, February 23, March 1, March 8, March 16, March 29, April 12, April 20, April 30, May 10, May 17, May 24, May 31, June 13, and June 20, 2018, the UC called the 3718 Number and spoke with Boogie to arrange to purchase narcotics. On June 28, 2018, the UC called another number, ending in 7797 (the "7797 Number"), which Boogie had provided him, and spoke with Boogie to arrange to purchase narcotics. After the June 28, 2018 controlled purchase, the UC called the 7797 Number to set up two other controlled purchases, which occurred on July 19 and July 30, 2018. For some of the buys, Boogie asked the UC to drive to a location in the Bronx to meet him; for others, Boogie met the UC in Mount Vernon and would enter the UC's car where the UC would hand money in exchange for a substance or otherwise complete the transaction

while at the location in Mount Vernon. All of these controlled buys were recorded. The calls to the 3718 Number and then the 7797 Number were verified in the following ways, among others: 1) the individual placing the calls has usually been himself a law enforcement officer; 2) on some occasions, other law enforcement officers witnessed that the number dialed by the UC was the 3718 Number or 7797 Number; 3) review of toll records for the 3718 Number and 7797 Number confirm that the UC was calling the 3718 Number or 7797 Number, respectively, at the relevant times. On or about February 16, 2018, the UC reviewed a photo of ANTIONNE JOHNSON, the defendant, and identified him as "Boogie".

        a.   I participated in the preparation, surveillance, and debriefing for the controlled purchases on February 5, February 9, February 23, March 1, March 8, March 16, April 12, April 20, April 30, May 10, May 17, May 24, May 31, June 20, July 19, and July 30, 2018. I have reviewed reports written by other members of law enforcement, including the UC, describing the other controlled purchases.

        9.   I have reviewed lab reports from the Westchester County Department of Laboratories and Research Division of Forensic Sciences that the substances received by the informant and UC for the three controlled purchases involving the CI, and for ten of the controlled purchases by the UC, tested positive for the presence of heroin. In total, the UC has paid more than $19,000 for what is believed to be approximately 270 grams of substances believed to be heroin (on some occasions, the UC also purchased crack cocaine, totaling approximately 10 grams of crack).

### The August 16, 2018 Scheduled Buy

        10.   On or about August 9, 2018, the UC called the 7797 Number, and among other things, asked ANTIONNE JOHNSON, a/k/a "Boogie," the defendant, to sell him 150 grams of heroin. Boogie agreed, and said he could provide the UC with 150 grams of heroin on or about August 16, 2018. In the days leading up to and on August 16, 2018, the UC was in contact with the 7797 Number, and arranged to meet with Boogie at 10:00 a.m. At approximately 9:15 a.m. on August 16, 2018, JOHNSON left a residence in the Bronx (the "Bronx Residence") and entered his car. Law enforcement officers familiar with this investigation stopped JOHNSON's car in Mount Vernon. JOHNSON was subsequently placed under arrest. A search incident to arrest disclosed that JOHNSON was carrying on his person a black plastic bag

containing a clear plastic bag with a loose white powder substance, that weighed approximately 155 grams, and based on my training, experience, and participation in this investigation, I believe to be heroin.

WHEREFORE, deponent respectfully requests that ANTIONNE JOHNSON, a/k/a "Boogie," the defendant, be imprisoned or bailed, as the case may be.

PAO MEI FISHER
Special Agent
Federal Bureau of Investigation

Sworn to before me this
16 day of August, 2018

HONORABLE PAUL E. DAVISON
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK